*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KOJAIAN MANAGEMENT CORPORATION
AND AFFILIATES,

   Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

   Defendant-Appellee.

UNPUBLISHED
December 17, 2019

No. 344697
Court of Claims
LC No. 17-000104-MT

Before: REDFORD, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

Plaintiff Kojaian Management Corporation and its affiliates (Kojaian), a unitary business group (UBG)[1] of partnerships, limited liability companies, and corporations under the Michigan Business Tax Act (MBTA), MCL 208.1101 *et seq.*, involved in real estate rentals, real estate development, leasing, and property management activities, and management of several related companies within the UBG, appeals as of right the Court of Claims' opinion and order denying Kojaian summary disposition and granting summary disposition to defendant Department of Treasury under MCR 2.116(C)(10). Kojaian disputes defendant's disallowance of its claimed

---

[1] A unitary business group is

> a group of United States persons, other than a foreign operating entity, 1 of which owns or controls, directly or indirectly, more than 50% of the ownership interest with voting rights or ownership interests that confer comparable rights to voting rights of the other United States persons, and that has business activities or operations which result in a flow of value between or among persons included in the unitary business group or has business activities or operations that are integrated with, are dependent upon, or contribute to each other. For purposes of this subsection, flow of value is determined by reviewing the totality of facts and circumstances of business activities and operations. [MCL 208.1117(6).]

investment tax credits (ITC), and defendant's assessments for tax years 2008 through 2011. For the reasons stated herein, we reverse the Court of Claims' ruling regarding Kojaian's claims for ITCs and because defendants withdrew at oral argument their statute of limitations challenge, we do not address that issue.

## I. BACKGROUND

In 2009, in relation to the Lehman Brothers bankruptcy proceeding, Lehman Brothers Holdings Inc. and numerous Lehman Brothers affiliates entered a settlement agreement with approximately 30 Kojaian affiliate entities under which the Lehman Brothers affiliate entities transferred their ownership interests in various entities to designated Kojaian affiliates.[2] The Kojaian affiliates obtained all of the interests of the Lehman Brothers affiliate entities essentially in exchange for release of secured loan debts of approximately $30,000,000. The settlement, an arms-length complex transaction between unrelated entities,[3] involved the assignment, transfer, and conveyance by the Lehman Brothers affiliates of their interests in numerous entities that owned or managed commercial buildings and developed properties in Michigan and their assets. The Lehman Brothers affiliates owned certain percentage interests in the entities in which certain Kojaian affiliates also held percentage interests. After the consummation of the settlement, the Kojaian affiliates acquired the Lehman Brothers affiliates' interests in exchange for the discharge and release of the $30,000,000 debt claims resulting in the Kojaian affiliates holding after the transaction proportionately greater interests in the various entities and their assets. The Lehman Brothers affiliates conveyed all of their rights, title, and interests in the property and assets of the entities to the Kojaian affiliates.

In 2008, the UBG had 100 members, in 2009, 165 members, in 2010, 96 members. All references to Kojaian include any UBG member entities that acquired Lehman Brothers affiliate entities' interests that resulted in a claim for the ITCs. The partnerships interests that were sold and transferred had a federal Internal Revenue Code (IRC) 754 election in place.[4] The Lehman Brothers entities had to recognize and pay tax on the difference between the amount paid for the partnership interest and its federal tax basis. For partnerships with a negative federal tax basis, the Lehman Brothers entities paid tax on the absolute value of the tax basis. Relying on IRC 754 and 743(b), which provide that the amount paid for a partnership interest is treated as an acquisition of new partnership property by the new partner and by the partnership, each of the Kojaian UBG entities adjusted the basis of acquired partnership assets by the price paid by the partner at the time of the sale as reported on the incoming partners' IRS Form 1665, Schedule

---

[2] Synergy Group is a member of the UBG.

[3] Lehman Brothers and its affiliates were not members of the UBG.

[4] Under 26 USC 754, a partnership (or LLC taxed as a partnership) may elect to adjust the basis of partnership property when property is distributed or when a partnership interest (or membership interest in an LLC taxed as a partnership) is transferred. Section 754 election serves to reconcile a new partner's basis in the partnership. This election allows the new partner to receive the benefits of depreciation or amortization that he or she may not have received if the election was not made.

K-1. Relying on IRC 743(b), MCL 208.1105(2), and MCL 208.1403(3)(c), the Kojaian UBG members claimed increased federal and Michigan depreciation and Michigan ITCs against its MBTA liability for the 2008 through 2011 tax years for the cost accrued on the UBG member's books and records for depreciable tangible business assets located in Michigan.

Kojaian filed MBTA returns for tax years 2008, 2009, 2010, and 2011.[5] Defendant commenced an audit on August 24, 2012, for those tax years and made adjustments, including (1) denying ITCs for increased investment in assets subject to depreciation, amortization, or accelerated cost recovery, on the basis that the assets were purchased from members of the UBG, and (2) denying ITCs for partner's increased investment in depreciable assets reflected in the partner's increased federal tax basis in capital assets reported to an incoming partner under an election made under IRC 754. Defendant completed the audit on July 14, 2016.

On May 3, 2016, defendant issued a Bill for Taxes Due (Intent to Assess) for 2010, asserting an outstanding tax liability of $385,546, plus $95,114.41 in interest, and a $96,386.50 penalty for a total alleged liability of $577,046.91. On June 23, 2016, defendant issued two MBTA Annual Return Notices of Refund Adjustment for 2008 and 2009 increasing the assessed tax and reducing Kojaian's refund. On July 5, 2016, defendant issued a Bill for Taxes Due (Intent to Assess) for 2011, asserting a tax liability of $333,049.85, plus $117,486.77 in interest, and an $87,747.46 penalty, for a total alleged liability of $538,284.08. Kojaian requested informal conferences regarding the notices and intents to assess and a conference occurred on September 7, 2016.[6]

On January 19, 2017, defendant issued a decision and order upholding its adjustments and denying Kojaian's claimed overpayment and credit forward for 2008 and 2009, affirmed its assessments for 2010 and 2011, and removed all failure to pay penalties other than $4,485. Defendant's decisions and orders affirmed its notices and ordered that final assessments be issued for 2010 and 2011, but final assessments were not issued.

On March 16, 2017, Kojaian paid the 2010 and 2011 assessments in full, under protest. On April 18, 2017, Kojaian sued for a declaratory judgment that defendant's reduction of the claimed overpayments for 2008 and 2009 were unlawful and that it had entitlement to a refund of $957,947.45 in taxes and interest assessed for 2010 and 2011, plus statutory interest, costs, and attorney fees. Kojaian alleged that defendant (1) unlawfully made adjustments because they occurred outside the statute of limitations set forth in MCL 205.27a(2),[7] (2) unlawfully denied the ITC for increased investment in depreciable assets, (3) unlawfully denied the ITC for

---

[5] Kojaian filed the 2008 return on March 31, 2010, the 2009 return on February 10, 2011, the 2010 return on May 23, 2012, and the 2011 return on March 25, 2013.

[6] Under MCL 205.21a a taxpayer may seek an informal conference.

[7] Kojaian abandoned this argument at oral argument, and therefore, it will not be substantively addressed.

-3-

increased federal tax basis in capital assets as provided under an IRC 754 election, and (4) unlawfully denied deduction of materials and supplies.

During litigation, defendant initially reduced Kojaian's claimed ITC because Kojaian included costs paid by UBG members to purchase tangible assets from Synergy Group. Defendant, however, determined that Kojaian could claim the ITC respecting the costs incurred by Synergy Group in the development of tangible personal property from entities outside the UBG and refunded Kojaian $484,188 plus $99,448.22 in statutory interest.

On March 16, 2018, Kojaian moved for summary disposition on its statute of limitations claim, its claim regarding defendant's unlawful denial of ITC, and its claim that defendant unlawfully denied deduction of materials and supplies. It argued that Michigan followed federal tax elections under IRC 338(h)(10)[8] and IRC 754,[9] which allowed treatment and taxation of a sale of stock, an intangible asset, as a sale of all assets of the corporation for tax purposes. Kojaian further argued that the plain language of the statute permitted materials and supplies to be excluded from gross receipts as purchases from other firms, and that defendant failed to issue the assessments within the required limited statutory period.

Defendant asserted that the ITC adjustment, related to a partner's basis in a partnership asset, was limited to the cost incurred by the taxpayer to acquire tangible assets located and used in Michigan and, because Kojaian's election did not cause the partnership or any of its partners to incur a cost related to the purchase of a tangible asset, defendant correctly decided to reduce the credit. Defendant also argued that it properly reduced the amount Kojaian deducted from gross receipts for materials and supplies because Kojaian treated service expenses as costs associated with acquiring materials and supplies, and this Court had already ruled that a payment for a service is not deductible as a payment for a material or supply.

On June 28, 2018, the Court of Claims issued its opinion on the competing motions for summary disposition, granting defendant's motion and denying Kojaian's motion. It held that the four-year statute of limitations in MCL 205.27a(2) did not bar the assessment. Respecting the ITC, the Court of Claims summarized that MCL 208.1403(3) permits a taxpayer to claim a

---

[8] Under 26 USC 338, a purchasing corporation may treat a stock acquisition of a target corporation as an asset acquisition for federal income tax purposes. The purchaser making this election receives a stepped-up basis in the target corporation's assets.

[9] 26 USC 754 provides in relevant part:

> If a partnership files an election, in accordance with regulations prescribed by the Secretary, the basis of partnership property shall be adjusted, in the case of a distribution of property, in the manner provided in section 734 and, in the case of a transfer of a partnership interest, in the manner provided in section 743. Such an election shall apply with respect to all distributions of property by the partnership and to all transfers of interests in the partnership during the taxable year with respect to which such election was filed and all subsequent taxable years.

credit for a percentage of: "(1) costs (2) paid or accrued (3) of tangible assets (4) that are or will become eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes (5) provided that the assets are located in Michigan and used for business activity in Michigan." It concluded that the parties' dispute centered on whether Kojaian could claim a credit for a percentage of "costs" that were "paid or accrued."

Defendant maintained that Kojaian's purchase of partnership interests did not equate to incurring costs in the purchase and use of tangible assets for the purpose of the ITC. Defendant argued that regardless whether, for accounting purposes, Kojaian had entitlement to a step-up in basis when elections were made under IRC 754, Kojaian did not acquire or incur costs in assets within the meaning of MCL 208.1403(3)(a), but merely acquired interests in preexisting tangible assets. Kojaian asserted that nothing in the statute required a taxpayer to acquire a new asset and that a step-up in basis upon making an election under IRC 754 had to be respected. According to Kojaian, because the increase in adjusted basis of assets is respected for depreciation purposes, it also had to be respected for ITC purposes.

The Court of Claims held that the ITC did not apply if no purchase or acquisition of assets occurred, notwithstanding that Kojaian made an election under IRC 754 when partnership assets were acquired. It agreed with Kojaian that the statute did not use the term "acquire" when referring to tangible assets, but interpreted the statute as predicating availability of the ITC "on there being a cost 'of tangible assets' 'paid or accrued' in the taxable year." The Court of Claims reasoned that "[p]aying a cost for an asset implies that the entity claiming the credit had purchased or acquired the asset." It agreed with defendant's contention that Kojaian had not acquired any assets and that the step-up in basis concerned the partnership's already-existing assets. It concluded that the incoming partner had not acquired any assets, only a partnership interest, and instead of acquiring an asset subject to the IRC 754 election, simply adjusted the basis of an asset. The Court of Claims held that the cost concerning the subject of the IRC 754 election consisted of "merely an accounting adjustment 'with respect to the transferee partner only' " and that that accounting adjustment for an incoming partner "d[id] not fit within the plain language of MCL 208.1403(3)(a)" or comport with the purpose of the statute. The Court of Claims found that Kojaian sought to claim credits for an accounting adjustment available to an incoming partner regarding the partnership's "already existing assets" and not for a new investment in assets. Accordingly, the Court of Claims rejected Kojaian's claim of entitlement to the ITC.

Finally, the Court of Claims held that defendant properly denied Kojaian's materials and supplies deduction. After determining that "materials and supplies" referred to tangible objects, the Court of Claims examined defendant's documentary evidence. It showed that Kojaian's materials and supplies deduction contained disqualifying expenses related to labor and services. The Court of Claims granted defendant's motion for summary disposition and denied Kojaian's motion for summary disposition. Kojaian now appeals regarding denial of the credits to which it claims entitlement and the assessments of business taxes for the 2008 and 2009 tax years.

II. STANDARDS OF REVIEW

We review de novo a trial court's grant of summary disposition, *In re Pollack Trust*, 309 Mich App 125, 134; 867 NW2d 884 (2015), and questions of statutory interpretation, *Adams*

*Outdoor Advertising, Inc v City of Holland*, 463 Mich 675, 681; 625 NW2d 377 (2001). A motion under MCR 2.116(C)(10) tests the factual sufficiency of claims and the moving party bears the burden of establishing with admissible evidence its entitlement to judgment as a matter of law. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). If the nonmoving party fails to establish the existence of a genuine issue of material fact, the trial court must enter judgment for the moving party. *Id*. at 537. "A genuine issue of material fact exists when, viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on an issue." *Id*.

## III. DISCUSSION

Kojaian argues that the Court of Claims erred respecting its claim for ITC because MCL 208.1403(3) provides that costs qualify for the credit if they have accrued and are a type recognized under federal tax law as eligible for depreciation for federal tax purposes. Kojaian asserts that its accrued costs for the depreciable asset met the requirements for eligibility for depreciation and the ITC, and therefore, should have been includable in the calculation of the credit. Kojaian contends that the Court of Claims erred by holding that the accrued costs from the acquisitions could be recognized for federal and Michigan depreciation expense, but not for the ITC, and in doing so, it gave the term "accrued cost" a different meaning than federal tax law in contravention of the plain language of the credit statute and the general rule that federal law controls definitions of terms used in the MBTA and not defined differently by it.[10] Further, Kojaian also asserts that the Court of Claims erred by reading a purchase requirement into the statute. We agree.

Our primary goal in interpreting a statute is to determine and give effect to the intent of the Legislature. *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007). "The Legislature is presumed to intend the meaning clearly expressed, and this Court must give effect to the plain, ordinary, or generally accepted meaning of the Legislature's terms." *D'Agostini Land Co LLC v Dep't of Treasury*, 322 Mich App 545, 554; 912 NW2d 593 (2018) (citation omitted). "Judicial construction of a statute is only permitted when statutory language is ambiguous," and ambiguity exists "only if it creates an irreconcilable conflict with another provision or it is equally susceptible to more than one meaning." *Noll v Ritzer (On Remand)*, 317 Mich App 506, 511; 895 NW2d 192 (2016). In *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009), our Supreme Court stated the principles of statutory construction as follows:

> As far as possible, effect should be given to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. Moreover, when considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme. While defining particular words in statutes, we

---

[10] Michigan follows federal tax law and federal tax treatment of transactions to determine the meaning of terms in the MBTA and uses federal taxable income to determine taxable business income and gross receipts. See MCL 208.1103; MCL 208.1105(2); and MCL 208.1111.

must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme. A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. Moreover, courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute. [Quotation marks and citations omitted.]

Words and phrases are to be construed in context and we may consult a dictionary to ascertain the plain and ordinary meaning of terms if necessary. *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). A word is not ambiguous, however, merely because different dictionary definitions exist.

When ambiguities exist, tax laws are generally construed in favor of the taxpayer, but tax statutes that grant tax credits or exemptions are to be narrowly construed in favor of the taxing authority because such statutes reduce the amount of tax imposed. However, while tax-exemption statutes are strictly construed in favor of the government, they are to be interpreted according to ordinary rules of statutory construction. [*Ashley Capital LLC v Dep't of Treasury*, 314 Mich App 1, 7; 884 NW2d 848 (2015) (quotation marks and citations omitted).]

Further,

the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons. However, these are not binding on the courts, and [w]hile not controlling, the practical construction given to doubtful or obscure laws in their administration by public officers and departments with a duty to perform under them is taken note of by the courts as an aiding element to be given weight in construing such laws and is sometimes deferred to when not in conflict with the indicated spirit and purpose of the legislature. [*In re Rovas Complaint*, 482 Mich 90, 103; 754 NW2d 259 (2008) (citation omitted).]

The requirement that courts give "respectful consideration" of an agency's statutory interpretation is not the same as giving it "deference," as that "term is commonly used in appellate decisions" today. *Rovas*, 482 Mich at 108. Although an agency's interpretation may be a helpful aid in construing a statutory provision with a "doubtful or obscure" meaning, courts are responsible for the final determination of whether an agency's interpretation is erroneous under traditional rules of statutory construction. *Id.* at 103, 108. A party claiming entitlement to tax credits bears the burden of proof. *Menard Inc v Dep't of Treasury*, 302 Mich App 467, 479; 838 NW2d 736 (2013).

MCL 208.1403(3) governs ITCs and provides as follows:

(3) Subject to the limitation in subsection (1), for the 2008 tax year a taxpayer may claim a credit against the tax imposed by this act equal to 2.32% multiplied by the result of subtracting the sum of the amounts calculated under subdivisions (d), (e), and (f) from the sum of the amounts calculated under subdivisions (a), (b), and (c). Subject to the limitation in subsection (1), for the 2009 tax year and each tax year after 2009, a taxpayer may claim a credit against the tax imposed by this act equal to 2.9% multiplied by the result of subtracting the sum of the amounts calculated under subdivisions (d), (e), and (f) from the sum of the amounts calculated under subdivisions (a), (b), and (c):

(a) Calculate the cost, including fabrication and installation, paid or accrued in the taxable year of tangible assets of a type that are, or under the internal revenue code will become, eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes, provided that the assets are physically located in this state for use in a business activity in this state and are not mobile tangible assets.

(b) Calculate the cost, including fabrication and installation, paid or accrued in the taxable year of mobile tangible assets of a type that are, or under the internal revenue code will become, eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes. This amount shall be multiplied by the apportionment factor for the tax year as prescribed in chapter 3.

(c) For tangible assets, other than mobile tangible assets, purchased or acquired for use outside of this state in a tax year beginning after December 31, 2007 and subsequently transferred into this state and purchased or acquired for use in a business activity, calculate the federal basis used for determining gain or loss as of the date the tangible assets were physically located in this state for use in a business activity plus the cost of fabrication and installation of the tangible assets in this state.

(d) If the cost of tangible assets described in subdivision (a) was paid or accrued in a tax year beginning after December 31, 2007, or before December 31, 2007 to the extent the credit is used and at the rate at which the credit was used under former 1975 PA 228 or to the extent the credit was used, and at the rate at which the credit was used under this act, calculate the gross proceeds or benefit derived from the sale or other disposition of the tangible assets minus the gain, multiplied by the apportionment factor for the taxable year as prescribed in chapter 3, and plus the loss, multiplied by the apportionment factor for the taxable year as prescribed in chapter 3 from the sale or other disposition reflected in federal taxable income.

(e) If the cost of mobile tangible assets described in subdivision (b) was paid or accrued in a tax year beginning after December 31, 2007, or before December 31, 2007 to the extent the credit is used and at the rate at which the credit was used under former 1975 PA 228 or to the extent the credit was used,

and at the rate at which the credit was used under this act, calculate the gross proceeds or benefit derived from the sale or other disposition of the mobile tangible assets minus the gain and plus the loss from the sale or other disposition reflected in federal taxable income. This amount shall be multiplied by the apportionment factor for the tax year as prescribed in chapter 3.

(f)    For assets purchased or acquired in a tax year beginning after December 31, 2007, or before December 31, 2007 to the extent the credit is used and at the rate at which the credit was used under former 1975 PA 228 or to the extent the credit was used, and at the rate at which the credit was used under this act, that were eligible for a credit under subdivision (a) or (c) and that were transferred out of this state, calculate the federal basis used for determining gain or loss as of the date of the transfer. For purposes of this subdivision, "transferred out of this state" means removal from this state of tangible assets, other than mobile tangible assets, by means other than sale or other disposition.

Subpart (a) plainly permits a taxpayer, for purposes of claiming an ITC, to include the cost of tangible assets, either paid or accrued in the tax year, that are or will be eligible under the IRC for depreciation for federal tax purposes, if the assets are physically located in Michigan for use in a business activity in Michigan. In this case, the record reflects that Kojaian sought credit for tangible assets that were depreciable for federal tax purposes and they were located in Michigan for business activity in this state. The Court of Claims reasoned that the availability of ITCs must be predicated upon the payment or accrual of a cost for tangible assets, and that payment impliedly requires that the claimant purchased or acquired the asset. It concluded that Kojaian did not acquire any assets because the partnership merely took the step-up in basis for the partnership's "already-existing assets." The Court of Claims interpreted the cost that is the subject of an IRC 754 election as "merely an accounting adjustment 'with respect to the transferee partner only.' "

The record in this case reflects that, in relation to the Lehman Brothers' bankruptcy, Lehman Brothers and its affiliates conveyed, assigned, and transferred assets including membership interests in various entities to Kojaian in exchange for Kojaian's release of approximately $30,000,000 secured claims related to loans and the rights to repayment. The assets Kojaian acquired are depreciable assets for which it seeks to claim ITCs. Examination of federal tax law is required in this case for determination of the issue presented. To determine whether Kojaian's adjustment of the basis of an already-existing partnership asset constituted a "cost" "of tangible goods" "paid or accrued," an understanding of why and how this "accounting adjustment" occurs is needed. Federal law does not tax a partnership as an entity, but instead taxes the partners "in their individual or separate capacities." 26 USC 701. To appropriately tax partners on their gains and losses, it is necessary to know what the partner's basis is in their partnership interest and what the partner's basis is in the partnership assets. Ideally, these are equal, but that is not always the case.

Kojaian acquired interests in partnerships with IRC 754 elections. 26 USC 754 provides:

If a partnership files an election, in accordance with regulations prescribed by the Secretary, the basis of partnership property shall be adjusted, in the case of

a distribution of property, in the manner provided in section 734 [26 USC 734] and, in the case of a transfer of a partnership interest, in the manner provided in section 743 [26 USC 743]. Such an election shall apply with respect to all distributions of property by the partnership and to all transfers of interests in the partnership during the taxable year with respect to which such election was filed and all subsequent taxable years. Such election may be revoked by the partnership, subject to such limitations as may be provided by regulations prescribed by the Secretary.

Under 26 USC 743(b), if a partnership has made an IRC 754 election, when "a transfer of an interest in [the] partnership by sale or exchange or upon the death of a partner" occurs, the partnership:

immediately after such transfer shall—

(1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property, or

(2) decrease the adjusted basis of the partnership property by the excess of the transferee partner's proportionate share of the adjusted basis of the partnership property over the basis of his interest in the partnership.

Under regulations prescribed by the Secretary, such increase or decrease shall constitute an adjustment to the basis of partnership property with respect to the transferee partner only. A partner's proportionate share of the adjusted basis of partnership property shall be determined in accordance with his interest in partnership capital and, in the case of property contributed to the partnership by a partner, section 704(c) [26 USC 704(c)] (relating to contributed property) shall apply in determining such share. In the case of an adjustment under this subsection to the basis of partnership property subject to depletion, any depletion allowable shall be determined separately for the transferee partner with respect to his interest in such property. [26 USC 743(b).]

Consequently, when a partnership with an IRC 754 election transfers a partnership interest, the transferee of that interest must adjust its tax basis in the partnership property, up or down, depending on the difference between the transferring partner's basis in the partnership property and the transferee's basis in the partnership interest (i.e., the amount paid for the partnership interest). In this case, Kojaian obtained partnership interests in partnerships that had IRC 754 elections. As a result, federal tax law required Kojaian to immediately adjust its basis in the assets of the partnerships in which it obtained partnership interests based on the difference between the value Lehman Brothers received for the transfer (Kojaian's tax basis) and Lehman Brothers' capital account value. It is these adjustments in basis to assets already owned by the partnerships at the time Kojaian acquired its partnership interests that Kojaian contends constitute "costs" "of tangible assets" "paid or accrued."

Under federal tax law, 26 USC 1012(a), the "basis of property shall be the cost of such property" unless otherwise provided under 26 USC 1001 *et seq*. This is consistent with the legal definition of "cost," which is "[t]he amount paid or charged for something; price or expenditure," *Black's Law Dictionary* (10th ed), because a taxpayer's basis in a piece of property is generally the price at which it purchased the asset. Kojaian basically argues that, because an asset's basis is its cost, the adjustment of the partnership's basis in its assets that occurred when Kojaian obtained a partnership interest with an IRC 754 election constituted a "cost." This argument has merit because, when a property's basis has been increased, not as much income will be realized upon the selling of the asset since income (or profit) constitutes the difference between the basis and the selling price. See 26 USC 61(a)(3) (defining income as gains "derived from dealings in property"). Thus, an increased basis in an asset technically reflects the increased cost required to obtain the asset.

Whether any costs were "paid or accrued" by Kojaian must be determined. "Among the definitions of the word 'pay' is 'to discharge or settle (a debt, obligation, etc.), as by transferring money or goods, or by doing something' and 'to discharge a debt or obligation.' " *Toaz v Dep't of Treasury*, 280 Mich App 457, 462; 760 NW2d 325 (2008), quoting *Random House Webster's College Dictionary* (1997), p 957. "Accrue" can be defined as "[t]o come into existence as an enforceable claim or right." *Black's Law Dictionary* (10th ed).[11] "Accrue" can also refer to something that accumulates or grows over time. See *Black's Law Dictionary* (10th ed) (defining "accrue" to mean "[to] accumulate periodically; to increase over a period of time").[12] The accrual accounting method is defined as an "accounting method that records entries of debits and credits when the revenue or liability arises, rather than when the income is received or an expense is paid." See *Black's Law Dictionary* (10th ed).

Notably, paid and accrued are not synonymous, as obligations can be accrued, but unpaid. *Bd of Trustees of the City of Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust v City of Pontiac*, 317 Mich App 570, 581-584; 895 NW2d 206 (2016) (discussing differentiating between accrued but unpaid obligations and future obligations). For Kojaian, therefore, to have incurred costs that were paid or accrued, the costs of the tangible assets needed to be discharged or settled by taking some action such as exchanging goods or money, or the costs needed to come into a legally enforceable claim or have accumulated over a period of time.

The Court of Claims held, and no one appears to have disputed, that the transfers "constituted sales or exchanges by Lehman Brothers." As this Court clarified in *Sault Ste Marie Comm'n v Sault Ste Marie City Attorney*, 313 Mich 644, 661; 21 NW2d 906 (1946) (quotation marks and citation omitted),

---

[11] See also *Merriam-Webster's College Dictionary* (11th ed) (defining "accrue" as "to come into existence as a legally enforceable claim").

[12] See also *Merriam-Webster's College Dictionary* (11th ed) (defining "accrue" as "to come about as a natural growth, increase, or advantage," and "to accumulate or be added periodically").

there is no substantial difference between a sale and an exchange; and the legal effect of a contract of exchange is generally the same as that of a contract for sale. In both cases the title is absolutely transferred and both transactions are governed by the same rules of law practically. In law an exchange is recognized as two sales or a double sale, and an exchange of real estate is as to each one of the parties a sale and purchase of property. The term "sale" may be construed as including an exchange, particularly under statutes so providing, and indeed exchanges are frequently denominated "sales."

The record reflects that the transfers from Lehman Brothers were sales or exchanges whereby Kojaian obtained title to the partnership interests by making the exchanges required by the bankruptcy settlement. By exchanging the required consideration specified in the settlement agreement for the partnership interests, Kojaian "paid" approximately $30,000,000 for those interests, and because Kojaian was required to increase or decrease its basis in the partnership assets acquired depending on the difference in value between Lehman Brothers' basis and the value of the consideration provided, Kojaian "paid" "costs."

MCL 208.1403(3)(a), refers to the "cost" "paid or accrued" "of tangible assets." Although the basis in the partnership property is adjusted to accurately reflect Kojaian's increased basis in the partnership interest, the "cost" or expenditure made in this case was exchanged for partnership interests. The term "tangible asset" is defined as an asset "that has a physical existence and is capable of being assigned a value." See *Black's Law Dictionary* (10th ed). Under MCL 449.8, the original property and all after-acquired property of a partnership is partnership property. MCL 449.24 specifies that the "property rights of a partner are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management." "A partner is a co-owner with his partners of specific partnership property holding as a tenant in partnership." MCL 449.25(1). Further, one of the incidents of the partnership tenancy in partnership property includes that a partner:

> has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners. [MCL 449.25(2)(a).]

Michigan law recognizes that partnership interests are personal property. MCL 449.26. Therefore, one who acquires an interest in a partnership obtains an interest in the partnership's tangible assets.

The Court of Claims determined that, for a cost to be paid for an asset, the entity claiming the ITC must have purchased or acquired an asset. The record reflects that Kojaian acquired interests in entities through the Lehman Brothers' bankruptcy settlement for the discharge and release of the claims related to the secured debt obligations certain Lehman Brothers affiliates owed. UBG members had percentage interests in various entities that increased upon Kojaian's acquisition via the exchange pursuant to the settlement. The record indicates that Lehman Brothers and its affiliates were not UBG members and the settlement between Lehman Brothers and Kojaian constituted an arms-length transaction. The Court of Claims concluded that Kojaian did not acquire any assets in the settlement transaction.

-12-

MCL 208.1403(3)(a) does not use the terms "purchased or acquired." It refers to costs for tangible assets "paid or accrued in the taxable year," as do subsections (3)(b), (d), and (e). The terms referenced by the Court of Claims, "purchased or acquired," are used in subsections (3)(c) and (f). Generally, where the Legislature uses different terms or phrases within the same statute, "the words are generally intended to connote different meanings . . . . If the Legislature had intended the same meaning in both statutory provisions, it would have used the same word." *US Fidelity & Guaranty Co v Michigan Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 14; 795 NW2d 101 (2009). However, statutory "language does not stand alone, and thus it cannot be read in a vacuum." *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003). "[W]ords in a statute should not be construed in the void, but should be read together to harmonize the meaning, giving effect to the act as a whole." *Id.* (quotations marks and citation omitted). "In seeking meaning, words and clauses will not be divorced from those which precede and those which follow." *Id.* (quotation marks and citation omitted). In this case, consideration of the interplay of the terms "paid or accrued" and "purchased or acquired" within the context of the entire statute is important for two reasons.

First, the terms "paid or accrued" are always used to modify the terms "costs" "of tangible assets," MCL 208.1403(3)(a), (b), (d), (e), but "purchased or acquired" always describes "tangible assets" themselves, not the costs incurred. Thus, the Court of Claims' assumption that "costs" must be "paid or accrued" when assets are "purchased or acquired" is consistent with MCL 208.1403(3) as a whole. Second, the MBTA defines "Purchases from other firms" to include "[a]ssets, including the costs of fabrication and installation, acquired during the tax year of a type that are, or under the internal revenue code will become, eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes." MCL 208.1113(6)(b). Under this definition, "purchases" include assets that have been acquired in any manner. Considering this language in conjunction with MCL 208.1403(3)(a) and (b), which require computation of "the cost, including fabrication and installation, paid or accrued," and with MCL 208.1403(3)(c) and (d), which require consideration of when "the cost of tangible[13] assets . . . was paid or accrued," it becomes clear that "costs" are something incurred, whether through payment or accrual, in the acquisition or purchase of assets.

The MBTA defines purchases of assets in terms of their acquisition. MCL 208.1113(6)(b). Thus, for the transfers in this case to constitute a "purchase from another firm," the partnership assets had to be "acquired" during the relevant tax year. " 'Acquire' is defined as 'to come into possession or control of *often by unspecified means*.' " *People v Bylsma*, 315 Mich App 363, 386; 889 NW2d 729 (2016) (emphasis in original), quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). Accordingly, for the sales and exchanges from Lehman Brothers to constitute a purchase or acquisition, Kojaian needed to take possession or control of the partnership assets in the relevant tax year.

---

[13] Subsection (e) actually refers to "mobile tangible assets," not simply "tangible assets," but for purposes of this analysis, that difference has no impact.

When Kojaian gave value to Lehman Brothers pursuant to the bankruptcy settlement in exchange for the partnership interests, Kojaian received an equal right to possess and control the partnership assets. When Kojaian paid Lehman Brothers, Kojaian incurred a cost (reflected in the increase in basis), the result of which was the acquisition or purchase (possession or control) of the partnerships' tangible assets. Kojaian's receipt of partnership interests from Lehman Brothers through a bankruptcy settlement agreement (an exchange for value) constituted "costs" "paid or accrued" "of tangible goods" as envisioned by MCL 208.1403(3)(a).

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court of Claims erred in its analysis of MCL 208.1403(3)(a). The Court of Claims concluded that "[p]aying a cost for an asset implies that the entity claiming the credit has purchased or acquired the asset," but there is no statutory requirement that the "cost" incurred through payment or accrual must purchase or acquire new assets not already owned by the partnership. Rather, under the plain language of the statute, we conclude that Kojaian "paid or accrued" "costs" "of tangible assets" by exchanging value with Lehman Brothers pursuant to the bankruptcy settlement to acquire partnership interests in partnerships with IRC 754 elections, thereby requiring an adjustment in the partnership's basis in the assets as to Kojaian, which acquisition gave Kojaian possession and control over the partnership assets. Therefore, Kojaian's acquisition of the partnership assets entitled it to claim the ITCs.

We reverse the Court of Claims' determination that Kojaian lacked entitlement to claim the ITCs. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Anica Letica

-14-